THOMAS WYLD,
on the first day of may, 1753, drew a bill of exchange, on Berkeley, Chauncey, and company, of London, lor 4401. 12s. Od. sterling, payable to Lunsiord Lomax and the plaintiff, who endorsed it, and endorsed it, at the request of the drawer, to give him a credit, thereby becoming his sureties, the hill was protested, the holder of it was Benjamin Waller, for the benefit of John Harmer and John Lidderdale, in England, to whom the money was due.
The plaintiff moreover endorsed two other bills of exchange, drawn by Thomas Wyld, on Berkeley, Chauncey, and company, which were protested: one for 400 pounds sterling, to which Thomas Turner was intitled, and the other for 500 pounds ster ling, to which James Mills was intitled.
In order to indemnify the plaintiff from loss by means of his endorsements, Thomas Wyld, by indenture, on the 8 day of june, 1753, conveyed all his estate, and assigned all his credits, to the plaintiff, giving him an irrevocable power of attorney to collect the latter, in trust to sell the estate, and to apply the money, to be raised by sale thereof, and by collection of the credits, to payment of the debts of Thomas Wyld in this order, to wit, 601. 13s. 6d. of current money of Virginia, due to Preswick and Thomas ; 660 pounds of current money due to James Mills, for which Thomas Birch and James Falkner were Thomas Wylds sureties ; 400 pounds sterling due to Thomas Turner by a protested bill of exchange, drawn by Thomas Wyld, and endorsed by the plaintiff and James Taylor; 500 pounds sterling due to James Mills, by a bill of exchange, drawn by Thomas Wyld, and endorsed by the plaintiff, if the bill should be protested, as was expected; 4401. 12s. sterling due to John Harmer and John Lidderdale, by the hill of exchange drawn by Thomas Wyld, and endorsed by the plaintiff and Lunsford Lo-max, if the hill should he protested, as was also expected ; and several other debts therein after mentioned.
The money produced, by the sale of Thomas Wylds estate, and the collection of his credits, after being applied to payment of those debts which, by the deed of trust, were to be first discharged, was so far from being sufficient toindemnfy the plaintiff that, on account of the bill for 4401. 12s. sterling, 5311. Is. *6 7d. of current money of Virginia, remained due ; which the plaintiff discharged, taking up the protested bill, and giving his own bond, for payment of the money remaining due on the bill, to Benjamin Waller.
The protested bill of exchange was taken up, and the bond executed' in discharge of it was dated, in november, 1756.
But' the plaintiff, as he alleged, peiplexed with much business, did not, until some time in the year 1766, demand one half of this money, with interest, from Lunsford Lomax, who refused to pay it.
To recover the money and interest the plaintiff commenced a suit against Lunsford Lomax in the county court of Caroline in chancery.
That defendent pleaded the statute for limitation of actions, in bar of the- plaintiffs' demand ; to which the plaintiff replied, that, in the sale of Thomas Wylds estate, and collection of his credits, the plaintiff was employed many years, and until it was ■completed, his loss, and the moiety of it, which the defendent ought to contribute, could not be ascertained. Lunsford Lo-max died before the argument.
A bill of revivor was filed against the present defendent, who relied upon the same plea.
The county court overruled the plea..
The defendent appealed to the high court of chancery,- which at that time consisted of three judges.
One of them was the plaintiff, who therefore could' not sit in. the cause, another was of the opinion that the plaintiffs right of action accrued the fourth day of november, 1756, when he took up the bill of exchange, and gave his own bond for payment of the money due upon it; and that not having commenced his suit before the year 1768, his demand was barred by the statute for limitation of actions, and that the decree was erroneous, the third judge seemed inclined to affirm the de>cree. and therefore the case, that it might not remain undecicided, (a) was adjourned, for difficulty, as it was said',, to the court oí appeals r who on the 7 day of july, 1790$ delivered this
*7 OPINION,
‘ That the act of limitations is no bar to the demand of the plaintiff, under the particular CIRCUMSTANCES of his case.’
REMARKS:
In this opinion is implied, that if these circumstances had not been in the plaintiffs case, he would have been barred, let us then enquire if the circumstances ought to have prevented the bar.
The circumstances are not particularly mentioned in the opinion . the multiplicity of business, with which the plaintiff in his bill allegeth himself to have been perplexed, will surely not be pretended lo be one of those circumstances, the only others are those stated in the replication, in considering which the following facts, proved by the plaintiffs own documents, deserve attention.
The bill of exchange was drawn and endorsed the first day of may, 1753 ; the deed of trust was executed on the 8 day of june, 1753, and acknowledged before Hanover county court on the same day. the trust estate was sold before the 25 day of apr'il, 1754, perhaps six months before, for on that day the money due for the sale was payable, and by the deed the sale was to he on six months credit, the bill of exchange was taken up by the plaintiff, and his own bond executed for payment of the money remaining due upon it, the 4 day of November, 1756. of Thomas Wylds credits collected by the plaintiff, amounting to 11031. 11s. 3d. all except 91.10s. lOd. were collected before and in the month of february,, 1762, which last was six years before the plaintiff commenced his suit.
Now'with what propriety could the replication state that the plaintiff could not ascertain his loss early enough to commence his suit for a contribution before 1768?
But whether he could or could not ascertain his loss sooner seems unimportant, if the deed of trust and letter of attorney had not been executed, the plaintiffs cause of action would have accrued, and consequently the time of limitation against him would have begun on the fourth day of november, 1756 ; because at that time the plaintiff discharged the hill of exchange, by executing his own bond for payment of the money due *8 thereby, and became the holder of the bill, the plaintiffs right of action, if he had a right of action, which seemeth indisputable, was founded, either on á compact, which, if not declared, is understood to exist, between those who jointly assume a bur-then, that they will bear the burthen équaly, where different proportions have not been stipulated ; in the same manner as a correspondent compact is understood to exist between joint adventurers in an enterprise that they shall share the profit: or founded on a substitution of the plaintiff by Harmer and Lidderdale in their place, by delivering the bill of exchange, which was an implicit assignment of their right, to him. on a substitution only, by the roman civil law, could a surety or a joint surety, who voluntarily paid the debt for which they were bound, compel the debitor, in one case, to reimburse the money, or the confidejussor, in the other case, to contribute towards his alleviation, (b) for, in the first case, the creditor, when he received his money from the surety non in solutum accepit, did not receive payment; it was not a payment, because a payment is the proper act of. a debitor, and although the creditors right to receive the money afterwards cannot be exerted by him, any more than if he had formaly assigned the right to another man, the debitors obligation to pay the money to some one is not discharged ; — the thing which he was bound to perform is not performed. a right to exact that performance, which remaineth unextinguished, not being exerciseable by the original creditor, is competent to the surety alone, to him therefore the creditor, when he received the money, quodammodo nomen debitoris vendidit; transferred the right to demand the money from the debitor ; a silent transition of the right being wrought by the praecept of justice, which intitleth him, who is injured by the default of another, to reparation, and consequently granteth to him the means necessary to effect the reparation, the same reasoning is applicable, in the other case, where one surety payeth the whole debt; for to him the creditor is understood ven *9 dere caeterorum nomina, to transfer his right to demand so much of the money as the other sureties ought to contribute, the plaintiffs right of action, which ever be the foundation of it, began when he discharged the whole money due to Harmer and Lidderdale, or when he Was substituted in their place. the same-must be the commencement of that period at the end of which the defendents right to prescribe was complete, if this would have been the case, on a supposition that the deed of trust and letter of attorney had not been executed, are any transactions between the plaintiff and thomas Wyld, transactions too in which Lunsford Lomax did not concur, which he doth not appear to have known, and of which he probably never heard, a,re these transactions such circumstances in the case of the plaintiff’ that the act of limitations ought to be no bar to his demand? or, in -other words, can the obligations and rights of one man be changed by transactions between other men, to which he, not only did not consent, but was not even privy? if the plaintiff, by action commenced against Lunsford Lomax in 1756, had recovered one half the money for which the bill of exchange was drawn, without deducting the money received by the sales of Thomas Wylds estate and by the collection of his credits, Lunsford Lomax, if he might have compelled the plaintiff to apply the money so received towards his alleviation, would have been intitled to the same remedy, although the deed of trust and letter of attorney had not been executed, so much for the circumstances in the case of the plaintiff.
Now let a few words be added on the circumstances in the case of Lunsford Lomax, that this man knew, had heard, or suspected, until the summer of 1766, that the bill of exchange, endorsed by him thirteen years before, had been protested, doth not appear, and is not even alleged. Benjamin Waller, or they for whose benefit he acted, if notice of the protest had not been given of it to Lunsford Lomax, in a reasonable time, could not have charged Mm by his indorsement; and no man will pretend thirteen years to be a reasonable time, in these circumstances, the plea of the statute for limitation of actions in this case would be thought by some to be a legal and conscientious defense, if better judges had not determined the contrary.

 Whether the decree in: this case, the coqjrt being divided, ought not to have been affirmed was not discussed at the hearing, the consequence of equal, suffrages, in criminal prosecutions, is absolution of the accused. JEsehylus, in-his Eumenides, informs us that such was the dictate of Minerva, in the case of Orestes, when of the judges, who tried him for slaying his mother, the same-number was on each side of the question, the like in trial of a slave, by the statute made in 1748, chap. 31. of the edition in 1769, sect. 7. the reason, may be that the accused is presumed to be innocent until he shall be condemned; anda majority at least must condemn., in the court of appeals, by the act.of their constitution, the sentence is affirmed, if the votes for reversal be nat mora *7 than the votes for the contrary; because the sentence, before it shall be condemned for error, is presumed to he correct; and when the balance is in aequili* brio, the scale for affirmance of the sentence under examination having that ¡presumption thrown into it preponderates, in the courts of common law, certain motions fail, if approved by half the judges only.

 Fidrjussoribus succurri solet, ut stipulator compellalvr ei, qui solidum solvere parutus est, venders caeterormn nomina. Big. 1. XLVL tit. 1.1. XVII.

Cum alh r ex fidejussoribus in solidum debito satisfacial, actio ei adversus mm, qui una fidejussit, non competit. potuisti sane, cum fisco solveres, desiderare, utjus pignoris, quodfiscushabuit, in te transferretur: et si hoc ita factum est, cessis actionibus uti poteris. quod, et in privatis debitis observandum est. C. 1. VIII lit. XL1.1. XI.

Cum is, qui et reum etfidejussores hdbens, ab uno ex fidejussoribus, accepta pecunia prat slat actiones, poterit quidem did nullas jam, esse: cum suum pcrceperit, etperceptione omnes liberali sunt, sed non ita est, non enim in solutum accipil, sed, quodammodo nomen debitoris vendidit, et ideo habet actiones, quia tenetur ad idipsum, ut praestet actiones. Big. lib. XLVI. tit. 1. Í. XXXVI.